John STANISH, Petitioner

v.

WORKERS' COMPENSATION APPEAL BOARD (JAMES J. ANDERSON CONSTRUCTION CO.), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 18, 2009.

Decided Dec. 7, 2010.

Richard C. Senker, Plymouth Meeting, for Petitioner John Stanish.

Christina A. Eunson, Media, for Respondent James J. Anderson Construction Company.

BEFORE: McGINLEY, Judge, and BUTLER, Judge and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

John Stanish (Claimant) petitions for review from an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a Workers' Compensation Judge (WCJ) denying his Modification Petition. We vacate the order of the Board and remand.

Claimant sustained an injury in the course and scope of his employment on August 5, 2005. He was awarded benefits pursuant to a WCJ's decision. Claimant subsequently submitted to an impairment rating evaluation (IRE) on April 14, 2008, conducted by L. Matthew Schwartz, M.D., at the request of James J. Anderson Construction Co. (Employer). Dr. Schwartz determined that Claimant had a 13% impairment. Based on this result, Employer issued form LIBC–764 to obtain self-executing relief in the nature of Claimant's disability status being changed from total disability to partial disability. Claimant filed a Modification Petition on May 12, 2008 challenging the validity of the IRE determination alleging the rating was not

calculated consistent with the most recent edition of American Medical Association's (AMA) *Guides to the Evaluation of Permanent Impairment* (AMA Guides). Robert D. Rondinelli et al., Am. Med. Assoc., *Guides to the Evaluation of Permanent Impairment.* (6th ed.2008).

The parties stipulated that Dr. Schwartz performed the IRE on April 14, 2008, utilizing the 5th edition of the AMA Guides. They further agreed that the AMA published the 6th edition of the AMA Guides in approximately January of 2008. The parties also agreed that the Bureau of Workers' Compensation (Bureau) sent notification to all physicians performing IREs indicating, in part:

> IRE Physicians will be required to meet the provisions set forth in § 123.103 of the regulations and attend an "approved training course" on the 6th Edition of the Guides. The deadline to obtain this training and reapply for inclusion of the 6th Edition Bureau list of IRE Physicians will be August 31, 2008.
>
> The Bureau will accept IREs performed using either the 5th Edition or 6th Edition of the Guides until August 31, 2008. Effective September 1, 2008, the bureau (sic) will accept only IREs performed using the 6th Edition of the Guides....

Reproduced Record (R.R.) at 3a.

By a decision circulated January 30, 2009, the WCJ denied Claimant's Petition. The WCJ explained that Claimant failed to meet his burden to challenge his disability status because he presented no evidence to support a finding that his impairment rating was equal to or greater than 50%.

Moreover, the WCJ found Dr. Schwartz properly performed the IRE utilizing the 5th edition of the AMA Guides because the Bureau informed all IRE physicians that IREs conducted using either the 5th or 6th editions would be accepted until August 31, 2008. The WCJ indicated that Dr. Schwartz did not receive his training under the 6th edition until May 23, 2008. Therefore, he was not yet qualified to utilize the 6th edition when he examined Claimant roughly five weeks earlier.

Claimant appealed challenging that his impairment rating was not calculated in accordance with the most recent edition of the AMA Guides. The Board affirmed the WCJ's decision. In so doing, it stated:

> If we accept Claimant's argument, as soon as new guides are published, no IRE's (sic) could be performed until the participating physicians received their training and re-certification pursuant to the new edition of the AMA Guides. This would cause an indefinite interruption in the IRE process and would, in our view, be an absurd result. Claimant has failed to state how the use of the earlier edition affected his impairment rating and thus affected his right to receive compensation. Since no substantive right was affected, the Bureau had a rational basis in the way it decided to phase in the Sixth Edition of the Guides.

R.R. at 14a.

Claimant filed a Petition for Review with this Court.[1] Claimant argues on appeal that the Pennsylvania Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4,

---

1. Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence and whether constitutional rights were violated. *Young v. Workers' Compensation Appeal Board (LGB Mech.),* 976

A.2d 627 (Pa.Cmwlth.2009). When there is a question of statutory construction, our review is plenary. *City of Phila. v. Workers' Compensation Appeal Board (Williams),* 578 Pa. 207, 851 A.2d 838 (2004).

2501–2708, mandates that an IRE be performed pursuant to the most recent edition of the AMA Guides. He contends that inasmuch as his IRE was conducted after the publication of the 6th edition of the AMA Guides, Dr. Schwartz's determination of a 13% impairment was invalid as it was arrived at using the 5th edition of the AMA Guides. Claimant asserts that the Bureau's directive that IREs could be performed utilizing both the 5th and 6th edition until August 31, 2008 is contradictory to statute and must be disregarded.

Section 306(a.2) of the Act, added by the Act of June 24, 1996, P.L. 350 (Act 57), 77 P.S. § 511.2, provides, in pertinent part:

(1) When an employe has received total disability compensation pursuant to clause (a) for a period of one hundred four weeks, unless otherwise agreed to, the employe *shall* be required to submit to a medical examination which *shall* be requested by the insurer within sixty days upon the expiration of the one hundred four weeks to determine the degree of impairment due to the compensable injury, if any. The degree of impairment *shall* be determined based upon an evaluation by a physician who is licensed in this Commonwealth, who is certified by an American Board of Medical Specialties approved board or its osteopathic equivalent and who is active in clinical practice for at least twenty hours per week, chosen by agreement of the parties, or as designated by the department, *pursuant to the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment."*[2]

(2) If such determination results in an impairment rating that meets a threshold impairment rating that is equal to or greater than fifty per centum impairment under the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment," the employee shall be presumed to be totally disabled and shall continue to receive total disability compensation benefits ... If such determination results in an impairment rating less than fifty per centum impairment under the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment," the employee shall then receive partial disability benefits ... Provided, however, That no reduction shall be made until sixty days' notice of modification is given.

. . .

(4) An employe may appeal the change to partial disability at any time during the five hundred-week period of partial disability; Provided, That there is a determination that the employe meets the threshold impairment rating that is equal to or greater than fifty per centum

2. We note that "[t]he legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives." Article II, Section 1 of the Pennsylvania Constitution. Furthermore, "[n]o law shall be passed except by bill." Article III, Section 1 of the Pennsylvania Constitution. Pursuant to the non-delegation doctrine reflected in these Sections of our Constitution, the Legislature may not delegate its law making power to any other branch of government, body, or authority. *Christ the King Manor v. Department of Public Welfare,* 911 A.2d 624 (Pa.Cmwlth.2006). Neither party raises any constitutional argument concerning whether the Legislature's use of the phrase "the degree of impairment shall be determined based upon an evaluation by a physician ... pursuant to the most recent edition of the American Medical Association 'Guides to the Evaluation of Permanent Impairment'" gives rise to any impermissible delegation of any law making power to the AMA when it issues a new text. Thus, we will not pursue this issue any further.

impairment under the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment...." (Emphasis added).

■■ Subsections (1) and (2) of Section 306(a.2) of the Act provide for a self-executing, automatic modification of benefits when the employer requests an IRE within sixty days after the claimant receives 104 weeks of total disability. *Gardner v. Workers' Compensation Appeal Board (Genesis Health Ventures)*, 585 Pa. 366, 888 A.2d 758 (2005). This presumes that the IRE physician calculates an impairment rating of less than 50%. *Ford Motor/Visteon Sys. v. Workers' Compensation Appeal Board (Gerlach)*, 970 A.2d 517 (Pa. Cmwlth.2009). An employer's failure to request an employee to submit to an IRE within the proscribed time frame set forth in subsection 1 of Section 306(a.2) of the Act does not preclude an employer from requesting that an injured worker submit to an IRE at a later time. *Gardner*, 585 Pa. at 382, 888 A.2d at 768. The results, however, are not self-executing. Rather, any relief that an employer may be entitled to based on the resultant impairment rating must be pursued through the traditional administrative process. *Id.* *See also Gerlach*, 970 A.2d at 520.

Similar to the requirements of Section 306(a.2)(1) of the Workers' Compensation Act, Section 123.105 of the Act 57 Regulations provides that "an impairment rating determination must result under the most recent edition of the AMA 'Guides to the Evaluation of Permanent Impairment.'" 34 Pa.Code § 123.105(a).[3] Section 123.103(d) of the Act 57 regulations further provides that:

[P]hysicians designated by the Department to perform IREs shall meet training and certification requirements which may include, but are not limited to, one or more of the following:

(1) Required attendance at a Departmentally approved training course on the performance of evaluations under the AMA "Guides to the Evaluation of Permanent Impairment."

(2) Certification upon passage of a Departmentally approved examination on the AMA "Guides to the Evaluation of Permanent Impairment."

(3) Other requirements as approved by the Department.

34 Pa.Code § 123.103(d).

■ The object of interpretation and construction of Pennsylvania statutes is to ascertain and effectuate the intention of the General Assembly. *Kramer v. Workers' Compensation Appeal Board (Rite Aid Corp.)*, 584 Pa. 309, 883 A.2d 518 (2005). When the words of a statute are clear and free from all ambiguity, it should be interpreted solely from the plain mean-

**3.** Section 123.105 of the Act 57 Regulations further provides:

(d) If the evaluation results in an impairment rating of less than 50%, the employee shall receive benefits partial in character. To adjust the status of the employee's benefits from total to partial, the insurer shall provide notice to the employee, the employee's counsel, if known, and the Department, on Form LIBC–764, "Notice of Change of Workers' Compensation Disability Status," of the following:

(1) The evaluation has resulted in an impairment rating of less than 50%.

(2) Sixty days from the date of the notice the employee's benefit status shall be adjusted from total to partial.

(3) The adjustment of benefit status does not change the amount of the weekly workers' compensation benefit.

(4) An employee may only receive partial disability benefits for a maximum of 500 weeks.

(5) The employee may appeal the adjustment of benefit status to a workers' compensation judge by filing a Petition for Review with the Department.

34 Pa.Code § 123.105(d).

ing of its words and the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. *Combine v. Workers' Compensation Appeal Board (Nat'l Fuel Gas Distrib.)*, 954 A.2d 776 (Pa.Cmwlth.2008). The term "shall," as it is used in Section 306(a.2)(1) of the Act is mandatory. *Gardner*, 585 Pa. at 379, 888 A.2d at 765–766.

■■■ Regulations promulgated by an administrative agency pursuant to a statutory directive are invalid if they are contrary to the legislative intent of statutory provisions to which they relate. *Johnson v. Workers' Compensation Appeal Board (Sealy Components Group)*, 982 A.2d 1253 (Pa.Cmwlth.2009). An administrative agency's regulations cannot conflict with the statutory intention. *Mercy Reg'l Health Sys. v. Department of Health*, 165 Pa.Cmwlth. 629, 645 A.2d 924 (1994). The statute is always controlling. *Id.* at 929. The Supreme Court, in *Gardner*, added " '[a]lthough an interpretation of a statute by an administrative agency is entitled to great weight, the interpretation may be disregarded if the interpretation is clearly erroneous or inconsistent with the statute under which the regulation is promulgated.' " *Gardner*, 585 Pa. at 381, 888 A.2d at 767 (quoting *Terminato v. Pennsylvania Nat'l Ins. Co.*, 538 Pa. 60, 71, 645 A.2d 1287, 1293 (1994)).

In light of the Supreme Court's holding in *Gardner*, there is no doubt that the use of the term "shall," as used in Section 306(a.2)(1) of the Act, is mandatory. Consistent with that provision, impairment ratings are to be determined in accordance with the most recent edition of the AMA Guides. Neither of the Bureau's regulations cited above is contrary to this directive. Section 123.105 of the Act 57 Regulations also instructs that an impairment rating must be calculated utilizing the most recent edition of the AMA Guides. Section 123.103(d) of the Act 57 Regulations instructs physicians who perform IREs may be required to attend training courses to familiarize themselves with the most recent edition of the AMA Guides to keep them abreast of any new ideas or information that is contained in that publication. The same regulation further provides IRE physicians may be required to pass a test and receive certification in regard to the AMA Guides. Regulations promulgated by an administrative agency pursuant to a statutory directive are invalid if they are contrary to the legislative intent of the statutory provisions. *Johnson*; *Mercy Reg'l Health Sys.* We see no conflict between Section 306(a.2)(1) of the Act and the cited portions of the Bureau's regulations.[4]

■■■ The crux of this case, however, centers around the Bureau's interpretation of its regulations as expressed in the notification to IRE physicians that in light of the issuance of the 6th edition of the AMA Guides in approximately January of 2008, it would accept impairment ratings calculated pursuant to either the 5th or 6th edition of the AMA Guides through August 31, 2008 to afford those physicians the opportunity to take a training course on the new text and reapply for certification. The Bureau believes this type of grace period prior to disallowing any impairment ratings calculated based on the 5th edition of the AMA Guides is permissible under Section 306(a.2)(1) of the Act and the supporting regulations. Although the Bureau's notification is not a regulation, it is the Bureau's interpretation of its own reg-

---

4. We acknowledge Section 123.105(f) of the Act 57 Regulations was invalidated by this Court in *Johnson*. *Johnson*, 982 A.2d at 1259. No conflict exists, however, between Section 123.105(a) and (d) and the Act.

ulation and must be given deference, but it may be disregarded if it is clearly erroneous or inconsistent with the statute under which the regulation being interpreted was promulgated. *Gardner.*

We are constrained to agree with Claimant that the Bureau's instruction that it would continue to accept impairment ratings calculated utilizing the 5th edition of the AMA Guides once the 6th edition became available is contrary to Section 306(a.2)(1) of the Act that states "[t]he degree of impairment shall be determined based upon an evaluation by a physician . . . pursuant to the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment." [5] Although the Bureau's decision to phase in the use of the newest edition of the AMA Guides may be reasonable, the interpretation of the Act 57 Regulations as expressed in the notification is inconsistent with the plain language of Section 306(a.2)(1) of the Act under which the regulations were promulgated. The Bureau's interpretation of its regulation as expressed in its notification is, therefore, invalid and is hereby disregarded since it is contrary to the statutory intent. *Gardner; Mercy Reg'l Health Sys.*

We understand the Board's concern that an immediate cessation of the use of an earlier edition of the AMA Guides upon the publication of a new edition would cause an indefinite interruption in the IRE process. When the Legislature amended the Act to establish the IRE system, however, it was obvious that the AMA Guides would change and that time might be needed to train and/or recertify IRE physicians on any newly published edition of the AMA guides. Nevertheless, the Act was written to specifically state that all IREs must be done in accordance with the most recent edition of the AMA Guides. We further point out that Section 306(a.2)(1) of the Act states only when an employer shall "request" an IRE. There appears to be no inconsistency within the statutory provision if there is some delay for the IRE to take place once requested in order for an IRE physician to be properly educated to conduct the examination. For instance, had Claimant's IRE been delayed for five weeks until Dr. Schwartz completed his training under the 6th edition, the IRE presumably would have complied with the statutory requirements. Alternatively, although Dr. Schwartz was selected approximately seven months before the IRE was scheduled, it had the option to request another physician who had completed 6th edition training during the four month period between the issuance of 6th edition and the date scheduled for the evaluation. Inasmuch as new editions of the AMA Guides are published roughly every seven years, the problem presented in this case will not be an annual one. Moreover, in light of the time between editions, the proper authorities can plan for the most efficient transition to any new AMA Guides in the future.

■ In the present matter the WCJ initially awarded Claimant benefits. Employer then attempted to avail itself of self-executing relief based on an IRE that was scheduled before the rating physician

---

5. Employer posits that because Dr. Schwartz was designated as the impairment rating physician in this matter on September 24, 2007, prior to the existence of the 6th edition of the AMA Guides, he should be able to use the 5th edition of the AMA Guides even though the IRE did not take place until April of 2008. Section 306(a.2)(1) of the Act states, however, that impairment shall be calculated based on the most recent edition of the AMA Guides. The 6th edition was available to physicians, including Dr. Schwartz, as of the date of the IRE. Therefore, it is immaterial what text was considered the "most recent" as of the time Dr. Schwartz was designated the IRE physician for this matter.

completed his training. In challenging Employer's right to self-executing relief, Claimant successfully carried his burden of proving the invalidity of the impairment rating because it was not calculated consistent with the most recent edition of the AMA Guides as required by the Act. The WCJ erred by thereafter placing the additional burden on the Claimant to prove that his impairment rating was equal to or greater than fifty per cent.

▪ Notwithstanding the contents of the previous paragraph, Employer did request its IRE within sixty days after Claimant received 104 weeks of total disability. Presuming the IRE physician calculated an impairment rating of less than 50% under the most recent edition of the AMA Guides, the 6th edition, Employer would be entitled to self-executing relief in the nature of Claimant's disability status being changed to partial disability. *Gardner.* If we were to simply reverse the Board's order and find that because Dr. Schwartz did not use the most recent edition of the AMA Guides, the impairment rating calculated was invalid, we would deprive Employer of its entitlement under the Act to obtain self-executing relief. Any subsequent IRE request would be made well outside sixty days of Claimant's receipt of 104 weeks of total disability. Thus, it could only obtain relief in the nature of a change from total to partial disability status through the traditional administrative process. *Gardner; Gerlach.* Employer complied with the strict time requirements for requesting the IRE under the Act and should not be penalized

for circumstances beyond its control; *i.e.,* the issuance of the 6th edition of the AMA Guides and the necessity that IRE physicians be certified under this most recent volume. Moreover, Employer was relying on the Bureau's notification that impairment ratings calculated under the 5th edition of the AMA Guides would be accepted through August 31, 2008 that we have determined to be contrary to statute.

Based upon our review, we vacate the Board's order. We remand to the Board for further remand to the WCJ. The WCJ is directed to permit Employer to have Claimant submit to a new IRE with a physician agreed to by the parties consistent with Section 306(a.2)(1) of the Act. In the event the parties cannot agree on an IRE physician, Employer may request the Bureau to designate one by completing Form LIBC–766 in accordance with 34 Pa.Code § 123.104.[6] Claimant's rate of impairment should be calculated under the most recent edition of the AMA Guides. The WCJ should consider any amended and/or new report as well as any additional evidence and issue new findings disposing of Claimant's Modification Petition.

### ORDER

AND NOW, this 7th day of December, 2010, the order of the Workers' Compensation Appeal Board (Board) in the above-captioned matter is vacated. This matter is remanded to the Board for further remand to the Workers' Compensation Judge (WCJ) to permit Respondent to have Petitioner submit to a new IRE with

---

6. 34 Pa.Code § 123.104 provides, in relevant part:
> (a) The insurer is responsible for scheduling the initial IRE. Only the insurer may request that the Department designate an IRE physician.
> (b) The Department's duty to designate an IRE physician pertains only to the initial

IRE. A list of Departmentally approved IRE physicians will be available upon request.
> (c) The request to designate a physician shall be made on Form LIBC–766, "Request for Designation of a Physician to Perform an Impairment Rating Evaluation. . . ."

a physician agreed upon by the parties consistent with Section 306(a.2)(1) of the Workers' Compensation Act. In the event the parties cannot agree on an IRE physician, Respondent may request the Bureau of Workers' Compensation (Bureau) to designate one by completing Form LIBC–766. The WCJ should consider any amended and/or new report issued pursuant to the most recent edition of the AMA Guides as well as any additional evidence and issue new findings disposing of Petitioner's Modification Petition.

Jurisdiction relinquished.