Douglas **LEWIS,** Petitioner

v.

**WORKERS' COMPENSATION APPEAL BOARD (WAL–MART STORES, INC. and Claims Management, Inc.), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 7, 2004.

Decided Aug. 20, 2004.

Terry Toomey, Meadville, for petitioner.

Anthony T. Colangelo, Pittsburgh, for respondent.

BEFORE: FRIEDMAN, Judge, and LEADBETTER, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Douglas Lewis (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that reversed an order of a Workers' Compensation Judge (WCJ). The WCJ denied a Petition for Physical Examination filed by Wal–Mart, Inc. (Employer), on the basis that Employer's request for a second Impairment Rating Evaluation of Claimant pursuant to the Pennsylvania Workers' Compensation Act (Act)[1] was not timely under this Court's precedents. We affirm the Board's order as modified.

Claimant was injured in the course and scope of his work for Employer on March 1, 1999. Thereafter, the parties signed a Notice of Compensation Payable acknowledging Claimant's injury as an aggravation of preexisting degenerative disc disease sustained while "pulling pallets", and Claimant began receiving benefits thereunder pursuant to the Act's provisions.

On August 22, 2002, Employer filed a Petition for Physical Examination, requesting that Claimant undergo an Impairment Rating Evaluation (IRE) pursuant to Section 306(a.2) of the Act, 77 P.S. § 511.2.[2] Hearings on Employer's Petition ensued thereafter before the WCJ.

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1—1041.4; 2501—2626.

2. *Added by* the Act of June 24, 1996, P.L. 350. Section 306(a.2) reads, in relevant part:

   *Medical examination; impairment rating*
   (1) When an employe has received total disability compensation pursuant to clause (a) for a period of one hundred four weeks, unless otherwise agreed to, the employe shall be required to submit to a medical examination which shall be requested by the insurer within sixty days upon the expiration of the one hundred four weeks to determine the degree of impairment due to the compensable injury, if any. The degree of impairment shall be determined based upon an evaluation by a physician who is licensed in this Commonwealth, who is certified by an American Board of Medical Specialties approved board or its osteopathic equivalent and who is active in clinical practice for at least twenty hours per week, chosen by agreement of the parties, or as

The WCJ, after receiving evidence and hearing arguments from both parties, found that Claimant had undergone an initial IRE, at Employer's request, on January 8, 2002, which resulted in a determination of Claimant's whole person impairment of fifty-three percent. In conjunction with that finding, the WCJ then cited to this Court's recent opinion in *Gardner v. Workers' Compensation Appeal Board (Genesis Health Ventures)*, 814 A.2d 884 (Pa.Cmwlth.2003), for the proposition that because Employer's second IRE request was not made within sixty days of the expiration of Claimant's receipt of one hundred and four weeks of temporary total disability benefits, Employer's second IRE request was untimely and therefore precluded. Based solely thereon, the WCJ denied Employer's Petition and dismissed the matter by order and opinion dated March 24, 2003. Employer timely appealed to the Board.

The Board heard the parties' arguments on the matter without taking any additional evidence. Upon concluding its examination of Section 306(a.2) and our opinion in *Gardner,* the Board concluded that *Gardner's* sixty day limitation applied only to an employer's *initial* IRE request, and not to a subsequent biannual IRE requested by an employer pursuant to Section 306(a.2). The Board further concluded that Employer in this matter was entitled to the second IRE as requested in its Petition, and reversed the WCJ's order. Additionally, the Board concluded that while the Act required the Workers' Compensation Bureau (Bureau) to assume responsibility for designating an IRE physician to perform an initial IRE under Section 306(a.2)'s mandate, Employer had the right to unilaterally select the IRE physician for the second requested IRE. The Board, in its decision and order dated January 14, 2004, directed Claimant to attend an IRE as scheduled by Employer. Claimant now petitions this Court for review of the Board's order.

■ This Court's scope of review is limited to determining whether there has

designated by the department, pursuant to the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment."

(2) If such determination results in an impairment rating that meets a threshold impairment rating that is equal to or greater than fifty per centum impairment under the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment," the employe shall be presumed to be totally disabled and shall continue to receive total disability compensation benefits under clause (a). If such determination results in an impairment rating less than fifty per centum impairment under the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment," the employe shall then receive partial disability benefits under clause (b): Provided, however, That no reduction shall be made until sixty days' notice of modification is given.
\* \* \*

(5) Total disability shall continue until it is adjudicated or agreed under clause (b) that total disability has ceased or the employe's condition improves to an impairment rating that is less than fifty per centum of the degree of impairment defined under the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment."

(6) Upon request of the insurer, the employe shall submit to an independent medical examination in accordance with the provisions of Section 314 to determine the status of impairment: Provided, however, That for purposes of this clause, the employe shall not be required to submit to more than two independent medical examinations under this clause during a twelve-month period.

77 P.S. § 511.2 (footnotes omitted).

been a violation of constitutional rights, errors of law committed, or a violation of Board procedures, and whether necessary findings of fact are supported by substantial evidence. *Lehigh County Vo–Tech School v. Workmen's Compensation Appeal Board (Wolfe)*, 539 Pa. 322, 652 A.2d 797 (1995).

Claimant presents two issues for our review: 1.) whether the Board erred as a matter of law in granting Employer's request for a second IRE without Employer having made a showing that the status of Claimant's disability has changed sufficiently to rebut the presumption of continuing disability, and; 2.) whether the Board erred as a matter of law in concluding that Employer was entitled to unilaterally designate its choice of physicians to perform a second IRE under the Act.

■ Claimant first argues that he cannot be subjected to a second IRE without Employer first demonstrating that Claim-

ant's medical condition, permanent impairments, and/or disability have undergone a material change since Claimant received a fifty-three percent whole person impairment rating as a result of the initial IRE. Claimant founds this argument on the presumption of total disability that Section 306(a.2) affords to a claimant whose impairment rating has been established to be fifty percent or greater. Claimant further asserts that Section 314 of the Act [3] provides for an employee's submission, at an employer's request, to an Independent Medical Examination (IME). Claimant argues that the Act contemplates that he first submit to an IME to determine whether the status of his impairment has changed, and that only such a change as confirmed by an IME would warrant submission to a second IRE.

This Court has recently examined arguments substantially identical to Claimant's in *Hilyer v. Workers' Compensation Appeal Board (Joseph T. Pastrill, Jr. Log-*

---

**3.** Section 314 reads, in relevant part:

*Examination of injured employee; refusal or neglect to submit to*

(a) At any time after an injury the employe, if so requested by his employer, must submit himself at some reasonable time and place for a physical examination or expert interview by an appropriate health care provider or other expert, who shall be selected and paid for by the employer. If the employe shall refuse upon the request of the employer, to submit to the examination or expert interview by the health care provider or other expert selected by the employer, a workers' compensation judge assigned by the department may, upon petition of the employer, order the employe to submit to such examination or expert interview at a time and place set by the workers' compensation judge and by the health care provider or other expert selected and paid for by the employer or by a health care provider or other expert designated by the workers' compensation judge and paid for by the employer. The workers' compensation judge may at any time after such first exam-

ination or expert interview, upon petition of the employer, order the employe to submit himself to such further physical examinations or expert interviews as the workers' compensation judge shall deem reasonable and necessary, at such times and places and by such health care provider or other expert as the workers' compensation judge may designate; and in such case, the employer shall pay the fees and expenses of the examining health care provider or other expert, and the reasonable traveling expenses and loss of wages incurred by the employe in order to submit himself to such examination or expert interview. The refusal or neglect, without reasonable cause or excuse, of the employe to submit to such examination or expert interview ordered by the workers' compensation judge, either before or after an agreement or award, shall deprive him of the right to compensation, under this article, during the continuance of such refusal or neglect, and the period of such neglect or refusal shall be deducted from the period during which compensation would otherwise be payable.

77 P.S. § 651(a).

*ging)*, 847 A.2d 232 (Pa.Cmwlth.2004). In *Hilyer*, the claimant petitioned this Court for review of the Board's affirmance of a WCJ order that the claimant submit to a second employer-requested IRE notwithstanding an initial IRE that assigned a fifty-five percent impairment rating to the claimant. Holding that the employer would be entitled to a suspension of the claimant's benefits if the claimant refused to submit to the second IRE, we addressed arguments therein essentially identical to Claimant's in the matter *sub judice*, writing:

> Claimant's attempt to assert that a prefatory showing that a change in a claimant's disability must be made prior to a request for a second impairment rating evaluation—whether such evaluation is semantically styled as an IME or an IRE—is additionally grounded in Claimant's assertion that such a showing would be consistent with the Act's mandate to be construed liberally in favor of injured workers. However, **such a prefatory showing is quite plainly not present anywhere within the text of Section 306(a.2),** and it is axiomatic that when the words of a statute are free and clear from all ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b); *Gardner*, 814 A.2d at 886, n. 7.

> Consequently, in the matter *sub judice*, the WCJ and the Board founded their decisions and orders directly upon the Act's own express language, and read the Act consistently with the above-cited precedents, in determining that **Insurer was entitled to request two IREs within twelve months.** Accordingly, the Board did not err as a matter of law in so holding.

Claimant further founds his primary argument upon his assertion that the Act's definition of impairment in Section 306(a.2)(8)(i) reasonably presumes an abnormality or loss resulting from a compensable injury to be permanent. Thus, **Claimant argues, once it is determined that a claimant's impairment rating is greater than 50 percent, there is no need to conduct additional IREs without prior evidence from an IME that the condition or status has improved sufficiently to rebut the condition presumed to be permanent. Claimant, however, premises this argument on an incorrect assumption that an IRE and an IME are mutually exclusive concepts.**

Claimant ignores the actual language of Section 306(a.2), which states that the goal of an IME thereunder is to "determine the status of **impairment.**" 77 P.S. § 511.2(6) (emphasis provided). We also note that Claimant's argument on this point fails to acknowledge that Section 306(a.2)(6), providing for the request of and submission to an IME, has been placed within the context of Section 306(a.2) as a whole, and the fact that every other subsection therein relates to the impairment process. These interrelated provisions each refer to an examination in the context of determining impairment rating, and they clearly treat an IME as a type of IRE ... Accordingly, **Section 306(a.2)(6) is properly read as permitting a maximum of two IREs in a twelve-month period.**

... Under our foregoing analysis, as well as in accordance with our analyses in *Gardner* and *Dowhower* [*v. Workers' Compensation Appeal Board (Capco Contracting)*], 826 A.2d 28 (Pa.Cmwlth. 2003), we hold that Section 306(a.2)(6) itself, with its stated goal of "determin-

ing the status of impairment", grants an insurer the right to two IREs within a twelve-month period.

*Hilyer*, 847 A.2d at 236 (footnote omitted, emphasis provided except where indicated above in original text). As we have expressly noted in *Hilyer*, neither the presumption of disability articulated in Section 306(a.2), nor that Section's reference to IME's and/or Section 314, nor a claimant's initial IRE impairment rating exceeding fifty percent, serve to establish— impliedly or expressly—any requirement that an employer demonstrate any change in a claimant's medical condition, permanent impairments, and/or disability as a condition precedent to the employer's timely request of a second IRE within a twelve month period. Simply put, Section 306(a.2) and the regulations[4] enacted thereunder entitle an employer to the timely request of two IREs within a twelve-month period without any prefatory showing. As did the argument of the claimant in *Hilyer*, Claimant's argument on this point in the instant matter must fail under the clear language of the Act and this Court's precedents. The Board, therefore, did not err in reversing the WCJ's denial of Employer's Petition.

█ Next, Claimant argues that the Board erred in holding that Employer has the right to select the physician to perform its requested second IRE. In its opinion, the Board wrote:

> Finally, it should be noted that it is the Bureau's position that it is only responsible to designate an IRE physician for an initial IRE. [See Reproduced Record at 14a]. Because the Bureau inter-

prets Section 306(a.2)(1) of the Act to apply only to initial IREs, we turn to Section 314 of the Act which provides that at any time after an injury the employe, if so requested by his employer, must submit himself at some reasonable time and place for a physical examination with an appropriate health care provider selected and paid for by the employer. **Therefore, we believe that [Employer] has the right to select an IRE physician who meets the qualifications as outlined in Section 306(a.2)(1).**

Board Opinion at 3–4 (footnote omitted; emphasis provided). The Bureau's regulatory interpretation of Section 306(a.2)(1), referenced by the Board, reads:

> *Initial IRE; designation of physician by Department.*
>
> \* \* \*
>
> (b) The Department's duty to designate an IRE physician pertains only to the initial IRE. A list of Departmentally approved IRE physicians will be available upon request.

34 Pa.Code § 123.104(b).

Claimant now argues that Section 306(a.2), which introduced the concept of IREs with its enactment in the 1996 amendments to the Act, evidences the General Assembly's intent to establish the IRE process as a more independently-assessed medical determination of a claimant's impairment rating than existed prior to the amendments. As support for this proposition, Claimant points to Section 306(a.2)(1)'s unambiguous mandate that "[t]he degree of impairment shall be deter-

---

4. The Bureau of Workers' Compensation has enacted the following regulation:

**The insurer maintains the right to request and receive an IRE twice in a 12–month period.** The request and performance of IREs may not preclude the insurer from

compelling the employe's attendance at independent medical examinations or other expert interviews under Section 314 of the Act (77 P.S. § 651).
34 Pa.Code § 123.102(g) (emphasis provided).

mined based upon an evaluation by a physician ... **chosen by agreement of the parties, or as designated by the department....**" 77 P.S. § 511.2(1)(emphasis provided). We agree.

The Board has misread the plain language and intent of Section 306(a.2), and the plain language of 34 Pa.Code § 123.104(b). Section 306(a.2)(1) clearly states that, where the goal of an employer's request is an IRE intended to determine a claimant's degree of impairment as provided for in that Section—as opposed, e.g., to an IME under Section 306(a.2)(6)—agreement of the parties or Bureau designation are the sole and exclusive avenues for physician selection. No provision is made in Section 306(a.2) for an employer's unilateral selection of an IRE physician. Further, no provision or authorization exists anywhere within the plain language of 34 Pa.Code § 123.104(b) for a unilateral IRE physician selection by an employer.

On their faces, neither Section 306(a.2) nor 34 Pa.Code § 123.104(b) permit the unilateral selection of an IRE physician by an employer. The Board's belief "that [Employer] has the right to select an IRE physician who meets the qualifications as outlined in Section 306(a.2)(1)" is incorrect.

Accordingly, we affirm the Board's order as modified herein.

### ORDER

AND NOW, this 20th day of August, 2004, the order of the Workers' Compensation Appeal Board, dated January 14, 2004, at A03–0943, is affirmed as modified in accordance with the foregoing opinion.